1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEVONTE BERNARD HARRIS, | No. C 09-00100 JF (PR) |
| Plaintiff, | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| JAMES THOM, | |
| Defendant. | (Docket No. 57) |

Plaintiff, a California prisoner proceeding pro se, brings the instant civil rights action pursuant to 42 U.S.C. § 1983 against officials of the Pelican Bay State Prison ("PBSP"). The Court found that the complaint, when liberally construed, stated cognizable claims, and ordered service on Defendants.[1] The only remaining Defendant is James Thom. Thom moves for summary judgment with respect to Plaintiff's claim of excessive force on the grounds that there is no genuine issue as to any material fact and that he is entitled to qualified immunity. (Docket No. 57.) Plaintiff has filed opposition,

---

[1] In the same order, the Court dismissed Plaintiff's retaliation claim against Defendants Troy Woods, Officer A. Griffin, and William Barlow for failure to state a claim. (See Docket No. 5.)

1  and Defendant has filed a reply.

2  **DISCUSSION**

3  **I.    Statement of Facts**

4        The following facts are not disputed unless otherwise indicated.  All the events

5  giving rise to this action took place on September 28, 2006, when Plaintiff was scheduled

6  to go to a Unit Classification Committee hearing.  (Compl. at 7.)  The facility was on

7  lockdown at the time because of an inmate assault on a correctional officer.  (Id.)

8  Plaintiff's hands were handcuffed behind his back from the time he exited his cell and

9  was escorted to the hearing which was held in the rotunda of C-section of building 7

10  where Plaintiff was housed.  (Id. at 8.)  The hearing was conducted by Correctional

11  Counselor D. Melton and Captain Robertson, who informed Plaintiff that he was being

12  placed in the Behavioral Modification Unit because of his past behavior.  (Oppo. at 2; J.

13  Thom Decl. at 2, Docket No. 60.)  According to Thom, Plaintiff then became very loud,

14  argumentative and agitated.  (Mot. at 4.)  Plaintiff alleges that he was attempting to

15  exercise his right "to participate and express disagreement with the committee's action."

16  (Compl. at 8.)  He claims that Thom interrupted him by asking Counselor Melton if she

17  was done, to which she responded that she was.  (Id.)  Plaintiff alleges that Thom and

18  Defendant Spencer[2] then picked him up out of his chair and dragged him back to this cell.

19  (Id.)  Thom asserts that Plaintiff resisted by refusing to stand and walk, and that he and

20  Spencer had to lift Plaintiff out of the chair and force him to his feet in order to escort him

21  back to his cell.  (Thom Decl. at 2.)  Plaintiff admits that he "passively resisted... by not

22  making an effort to stand on [his] own."  (Oppo. at 3.)  Plaintiff continued to yell over his

23  shoulder to the committee members that he had a right to participate in committee.

24  (Compl. at 8.)  Thom and Spencer state that they gave numerous orders to Plaintiff to stop

25

26

27        [2] On July 29, 2010, the Court granted Spencer's motion to dismiss Plaintiff's Eighth

28  Amendment claim for failure to state a claim.  (See Docket No. 65.)

1  resisting and walk.  (Thom Decl. at 2; Spencer Decl. at 2.)  Defendant Freeman[3] also

2  states that he observed Plaintiff resisting the escort by refusing to walk and dragging his

3  feet.  (S. Freeman Decl. at 2, Docket No. 62.)  Freeman followed the escort from behind

4  as Thom and Spencer took Plaintiff back to his cell in C-section.  Defendant Harkin,[4] the

5  control booth operator in building 7, opened the C-section door for the escorting officers

6  and observed Plaintiff yelling at staff and refusing to walk.  (J. Harkins Decl. at 2, Docket

7  No. 63.)

8          According to Defendants, Plaintiff attempted to stop the escort at the door of C-

9  section by placing both feet on the floor and pushing back toward Thom and Spencer.

10  (Thom Decl. at 2; Spencer Decl. at 2; Freeman Decl. at 2.)  Thom states that he was on

11  Plaintiff's left side, holding his upper left arm with both of his hands, and Spencer was

12  grasping Plaintiff's right bicep.  (Id.)  Thom and Spencer used their body weight and

13  forced Plaintiff to the ground in a prone position.  (Id.)  Plaintiff continued to be resistive

14  while on the ground, twisting, turning, yelling and trying to get to his feet and stand up.

15  (Thom Decl. at 2.)  Thom states that he was afraid that Plaintiff was going to spit on him

16  or get to his feet, so in response he put his right arm around Plaintiff, using a hold in order

17  to control Plaintiff's head and upper body from moving and to prevent Plaintiff from

18  possibly spitting on him.  (Id.)  Thom kept Plaintiff's face turned to the right facing away

19  from him.  (Id.)  Meanwhile, Spencer attempted to control Plaintiff's lower body while

20  Plaintiff resisted by kicking his legs from side to side.  (Spencer Decl. at 2.)  Spencer

21  eventually managed to gain control by crossing Plaintiff's legs, bending them at the knees

22  and then holding his feet to his buttocks.  (Id.; Freeman Decl. at 2.)  Freeman retrieved a

23  pair of leg restraints from Harkin, who sounded the alarm.  (Id.; Harkin Decl. at 2.)

24  _____

25      [3] On March 5, 2010, the Court granted the motion of Defendants S. N. Freeman, M.
26  Knight, and R. Rice to dismiss Plaintiff's Eighth Amendment claims for failure to state a
    claim on March 5, 2010.  (See Docket No. 48.)

27      [4] Defendant Harkin was dismissed from this action at Plaintiff's request.  (See Docket
28  No. 44.)

1  Plaintiff continued to resist while Freeman secured the restraints on Plaintiff's legs.

2  (Freeman Decl. at 2.)  Responding officers arrived, and Plaintiff was escorted out of the

3  building by Thom and Officer Sanders to a holding cell in the facility B hobby shop.  (Id.;

4  Harkins Decl. at 2; Thom Decl. at 3.)

5       Plaintiff alleges that when he entered the dayroom of C-section, he was tripped and

6  slammed to the floor by Thom, who then lay across Plaintiff's back and began chocking

7  him from behind.  (Compl. at 8-9.)  Plaintiff claims that Thom choked him to the point

8  where he could not breath, all the while calling Plaintiff "bitch."  (Id. at 9.)  Plaintiff

9  alleges that Thom continued to choke him for approximately one to one and a half

10  minutes with no interference from fellow correctional officers.  (Id.)  The rest of

11  Plaintiff's account essentially is consistent with that of Defendants.

12       Later that day, a videotape interview and investigation of the incident was

13  conducted by Defendant Rice.[5]  On the same day, all officers involved, including Thom,

14  provided written reports of the incident that reflect the same account attested to by them.

15  (See R. Rice Decl., Ex. A, Docket No. 59.)  According to the incident report, Thom and

16  Plaintiff both were examined for injuries.  Thom suffered an abrasion on his right elbow,

17  and Plaintiff had pain in his neck, an abrasion on his left hip, and an abrasion in the

18  middle of his back near the shoulder blades.  (Id.)  In accordance with PBSP policy, an

19  investigation was conducted as a result of the use of force on Plaintiff, (see O'Bannan

20  Decl., Ex. Y); there was no finding of excessive force by the executive review committee,

21  and no Defendant was disciplined.  (Thom Decl. at 3; Spencer Decl. at 2.)

22       Plaintiff alleges that he suffered soreness in his throat and had difficulty

23  swallowing for a week as a result of being choked.  (Compl. at 10.)  He also alleges that

24  he experienced pain in his left arm and sustained multiple abrasions on his hip and back.

25  (Id.)  Plaintiff claims that Thom subjected him to excessive force in violation of the

26  Eighth Amendment's prohibition against cruel and unusual punishment.

27

28      [5] See *supra* note 3.

1   **II.**   **Summary Judgment**

2       **A.**   **Standard of Review**

3       Summary judgment is proper where the pleadings, discovery and affidavits show

4   that there is 'no genuine issue as to any material fact and [that] the moving party is

5   entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant

6   summary judgment "against a party who fails to make a showing sufficient to establish

7   the existence of an element essential to that party's case, and on which that party will bear

8   the burden of proof at trial . . . since a complete failure of proof concerning an essential

9   element of the nonmoving party's case necessarily renders all other facts immaterial."

10   Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect

11   the outcome of the lawsuit under governing law, and a dispute about such a material fact

12   is genuine "if the evidence is such that a reasonable jury could return a verdict for the

13   nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

14       Generally, the moving party bears the initial burden of identifying those portions

15   of the record which demonstrate the absence of a genuine issue of material fact. See

16   Celotex Corp., 477 U.S. at 323. Where the moving party will have the burden of proof on

17   an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could

18   find other than for the moving party. But on an issue for which the opposing party will

19   have the burden of proof at trial, the moving party need only point out "that there is an

20   absence of evidence to support the nonmoving party's case." Id. at 325. If the evidence

21   in opposition to the motion is merely colorable, or is not significantly probative, summary

22   judgment may be granted. See Liberty Lobby, 477 U.S. at 249-50.

23       The burden then shifts to the nonmoving party to "go beyond the pleadings and by

24   her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

25   file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex

26   Corp., 477 U.S. at 324 (citations omitted). If the nonmoving party fails to make this

27   showing, "the moving party is entitled to judgment as a matter of law." Id. at 323.

28       The court's function on a summary judgment motion is not to make credibility

1  determinations or weigh conflicting evidence with respect to a disputed material fact.  <u>See</u>

2  <u>T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir.

3  1987).  The evidence must be viewed in the light most favorable to the nonmoving party,

4  and the inferences to be drawn from the facts must be viewed in a light most favorable to

5  the nonmoving party.  <u>See id.</u> at 631.  It is not the task of the district court to scour the

6  record in search of a genuine issue of triable fact.  <u>Keenan v. Allan</u>, 91 F.3d 1275, 1279

7  (9th Cir. 1996).  The nonmoving party has the burden of identifying with reasonable

8  particularity the evidence that precludes summary judgment.  <u>Id.</u>  If the nonmoving party

9  fails to do so, the district court may grant summary judgment in favor of the moving

10  party.  <u>See id.</u>; <u>see, e.g.</u>, <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026,

11  1028-29 (9th Cir. 2001).

12  **B.    <u>Legal Claims and Analysis</u>**

13  Plaintiff claims that Thom used excessive force when he tripped him and choked

14  him during the escort back to his cell.  When prison officials stand accused of using

15  excessive force in violation of the Eighth Amendment, the core judicial inquiry is whether

16  force was applied in a good-faith effort to maintain or restore discipline, or maliciously

17  and sadistically to cause harm. <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7 (1992); <u>Whitley v.</u>

18  <u>Albers</u>, 475 U.S. 312, 320-21 (1986).  In determining whether the use of force was for the

19  purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of

20  causing harm, a court may evaluate the need for application of force, the relationship

21  between that need and the amount of force used, the extent of any injury inflicted, the

22  threat reasonably perceived by the responsible officials, and any efforts made to temper

23  the severity of a forceful response.  <u>Hudson</u>, 503 U.S. at 7; <u>LeMaire v. Maass</u>, 12 F.3d

24  1444, 1454 (9th Cir. 1993); <u>see also</u> <u>Spain v. Procunier</u>, 600 F.2d 189, 195 (9th Cir. 1979)

25  (guards may use force only in proportion to need in each situation); <u>see, e.g.</u>, <u>Watts v.</u>

26  <u>McKinney</u>, 394 F.3d 710, 712-13 (9th Cir. 2005) (finding that kicking the genitals of a

27  prisoner who was on the ground and in handcuffs during an interrogation was "near the

28  top of the list" of acts taken with cruel and sadistic purpose to harm another); <u>Clement v.</u>

1  Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (pepper-spraying fighting inmates a second

2  time after hearing coughing and gagging from prior spray was not malicious and sadistic

3  for purpose of causing harm, where initial shot of spray had been blocked by inmates'

4  bodies).

5       Thom contends that he is entitled to summary judgment because the force he used

6  to restore order and control Plaintiff was justified under the circumstances.  According to

7  undisputed evidence in the record, Plaintiff had a history of violent and disruptive

8  behavior.  (Rice Decl. at 2-3.)   In a five and a half year period, Plaintiff received twenty-

9  three rules violation reports for disobeying a direct order, disrespecting an officer, or

10  engaging in behavior that could lead to violence.  (Id.; D. O'Bannon Decl., Exs. B thru

11  X.)  If an inmate has a history of disruptive behavior, the Unit Classification Committee

12  may place an inmate in the Behavior Modification Unit Program.  (Id.)  The committee

13  had made just such a decision on the day of the incident, which lead to Plaintiff's

14  agitation at the conclusion of the hearing.  (Id.; Compl. at 8.)  Thom offers evidence of a

15  similar incident that occurred on January 4, 2006, when Plaintiff appeared before the

16  committee and refused to leave when ordered to do so.  (Mot. at 4; O'Bannon Decl., Ex.

17  R.)  During that incident, Plaintiff also refused to get up from the chair and walk, and

18  officers had to pick Plaintiff up from the chair while Plaintiff continued to resist by

19  twisting his upper body.  (Id.)  The escorting officers were able to regain control by using

20  their weight to push Plaintiff down on his back and applying leg restraints.  (Id.)

21       Thom contends that he was required to act immediately in response to Plaintiff's

22  violent behavior and continued resistance on the day of the incident at issue here.  (Mot.

23  at 10.)  Thom asserts that for his own safety and for the safety and security of the

24  institution, and in light of Plaintiff's continued resistance, non-compliance with lawful

25  orders, and aggressive behavior, he made a good-faith effort to restore order and gain

26  control of Plaintiff.  (Thom Decl. at 3.)  Thom contends that he used the minimal amount

27  of force necessary given the circumstances, and that the force was reasonable because of

28  Plaintiff's violent behavior.  (Mot. at 10.)

In his opposition papers, Plaintiff repeats the allegations of his complaint, insisting that Thom and Spencer dragged him through the rotunda even while he was attempting to walk on his own. (Oppo. at 2.)  Plaintiff alleges that when he entered the dayroom of C-section, Thom tripped him, slammed him to the ground, and choked him to the point of asphyxiation. (Id. at 2-3.)  In support of these allegations, he provides the declarations of several inmates who witnessed the incident.  (Id., Attach.)  He also contends that Thom's fear that Plaintiff would spit on him was not "reasonably perceive[d]" because Plaintiff was unlikely able to turn his head to spit on Thom while in a prone position.  (Id. at 15.)  Plaintiff also suggests that Thom could have obtained a spithood if he genuinely perceived such a threat, and that he could have communicated his concerns to other officers but did not do so.  (Id. at 6.)  Finally, Plaintiff insists that the force used by Defendants was excessive, as he weighs only 150 pounds while the combined weight of Thom and Spencer is 500 pounds, and that under such circumstances he did not present a genuine threat. (Oppo. at 15-16.)  In reply, Thom contends that the standard for determining the reasonableness of force used is not to weigh the numerous options an officer has available to him against the actions taken.  (Reply at 1.)  Rather, the relevant inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm.  See Hudson, 503. U.S. at 6-7.  Thom contends that he used force not with the malicious intent to cause harm but to regain control over Plaintiff.  (Reply at 6.)

Based on the submitted pleadings, discovery and affidavits, the Court concludes that there is no genuine issue as to any material fact and that Thom is entitled to judgment as a matter of law on Plaintiff's excessive force claim. Fed. R. Civ. P. 56(c).  With respect to the events in the committee hearing room, Plaintiff admits that he "passively resisted" by not making an effort to stand on his own.  (Oppo. at 3.)  Nor does Plaintiff dispute that he was given a lawful order to which he failed to comply.  Accordingly, it cannot be said that Defendant acted unreasonably and with minimum force necessary to get Plaintiff back to his cell by lifting him out of the chair and carrying him from the

room with the help of another officer.

The situation admittedly became more complicated when Plaintiff and the escorting officers reached the entrance to C-section, where Plaintiff claims Thom tripped and slammed him to the floor.  However, even viewing this evidence in the light most favorable to Plaintiff, the Court cannot conclude that Thom acted inappropriately under the circumstances.  The declarations offered by Thom give consistent accounts of Plaintiff's resistance from the hearing room to the entrance of C-section, where Plaintiff attempted to stop the escort by placing his feet on the floor and pushing his body backwards.  See supra at 3-4.  Both Thom and Spencer state that because Plaintiff had planted his feet on the floor and had begun to push his body backwards and forwards, they had to use their body weight to move Plaintiff to the floor into a prone position. (Mot. at 9.)  These actions to force Plaintiff to the floor would account for the "tripping" to which Plaintiff and his witnesses attest.  Furthermore, the declarations of the inmate witnesses offered by Plaintiff actually do not contradict Thom's evidence but instead confirm that Plaintiff was not walking of his own accord and had to be dragged.  (See Oppo., Attach.)  Moreover, because these inmates were in their cells at the time of the incident, they obviously have no knowledge of Plaintiff's behavior prior to his arrival at the entrance of C-section.

Plaintiff also alleges that Thom choked him to the point where he could not breathe for approximately one to one and a half minutes.  Assuming that these allegations are true, the Court is not persuaded that the force used was excessive in relation to the need.  According to the undisputed facts, Thom released his hold on Plaintiff once leg restraints were applied; the declarations submitted by Thom and by Plaintiff are consistent on this point.  Further, Plaintiff himself states that when Thom put him in the hold, he went into "involuntary convulsions" such that his "legs possibly were kicking from side to side in an attempt to save itself."  (Oppo. at 5.)  Under these circumstances, it appears that Thom maintained control of Plaintiff's upper body long enough to enable other officers to secure Plaintiff's legs, indicating that Thom acted with the purpose of

1    maintaining control rather than malicious intent to cause harm.  <u>Hudson</u>, 503 U.S. at 7.

2         Plaintiff also alleges that Thom repeatedly called him "bitch" while applying the

3    choke hold, a fact which tends to show a malicious and sadistic intent to cause harm.

4    (Oppo. at 16.)  Plaintiff also claims that Thom's excessive use of force "was undoubtedly

5    based partly on resentment harbored in the aftermath of one of his fellow officers being

6    assaulted by an inmate with Plaintiff's same ethnic background."  (<u>Id.</u>)  However, this

7    allegation is conclusory and speculative and lacks any evidence to support it.  Assuming

8    that the name calling occurred, it is insufficient by itself to show malicious intent in light

9    of evidence that Thom applied no more than the minimum amount of force required and

10   no longer than necessary to regain control of Plaintiff.

11        While certain aspects of the subject incident are disputed, Thom has presented

12   overwhelming evidence showing that Plaintiff's was resistant and non-compliant

13   throughout the incident.  Under these circumstances, the Court concludes that no

14   reasonable jury could return a verdict for Plaintiff.  <u>Liberty Lobby</u>, 477 U.S. at 248.

15

16                              **CONCLUSION**

17        For the foregoing reasons, Thom's motion for summary judgment is GRANTED.

18   (Docket No. 57.)  The excessive force claim against Thom is  DISMISSED with

19   prejudice.

20        This order terminates Docket No. 57.

21        IT IS SO ORDERED.

22
     DATED: _____3/29/11_____                    _____
23                                                           JEREMY FOGEL
24                                                           United States District Judge

25

26

27

28

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

DEVONTE B. HARRIS,

                Plaintiff,

  v.

JAMES THOM,

                Defendant.

_____/

Case Number: CV09-00100 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on ___3/29/11_____, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Devonte Bernard Harris P 73399
CA State Prison-Corcoran II
P.O. Box 3481
4B3L-07L
Corcoran, CA 93212

Dated: ___3/29/11_____

                Richard W. Wieking, Clerk